In the

# United States Court of Appeals
## For the Seventh Circuit

No. 25-1974

DANIEL HEWITT and LYNNE THOMPSON,

*Plaintiffs-Appellants,*

*v.*

CAPITAL ONE, N.A.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:24-CV-04839 — **Edmond E. Chang**, *Judge.*

ARGUED FEBRUARY 10, 2026 — DECIDED APRIL 8, 2026

Before EASTERBROOK, SCUDDER, and KIRSCH, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Capital One resigned as custodian of the funds in plaintiffs' individual retirement accounts (IRAs) and told them that, unless they specified otherwise, their money would be transferred to Inspira Financial Trust (then known as Millennium Trust Company). Plaintiffs concede that their contracts with Capital One gave it every right to resign. After ample time had passed without action on plaintiffs' behalf, Capital One sent the money to Inspira— which told plaintiffs that, unless they instructed it to invest the money in some other way, it would stay in a "sweeps"

account based on bank deposits. Plaintiffs did not direct Inspira to act otherwise. The sweeps account paid interest at only 0.02% annually, which for plaintiffs came to less than the management fees that Inspira charged. They eventually sued both Capital One and Inspira for breach of contract, invoking the diversity jurisdiction of 28 U.S.C. §1332.

Plaintiffs contend that Capital One acted imprudently in choosing, as successor custodian, an institution that would pay them so little (which was less than their investments had earned at Capital One). Plaintiffs do not deny that Inspira is a reputable financial institution, but they complain that it too violated its duties by providing such a low return.

The district judge did not resolve plaintiffs' claims against Inspira, for they had promised to arbitrate with it. The judge resolved the claims against Capital One on the merits, dismissing the complaint under Fed. R. Civ. P. 12(b)(6). 2025 U.S. Dist. LEXIS 60482 (N.D. Ill. Mar. 31, 2025). The judge relied principally on a clause exculpating Capital One from liability for any loss caused by a successor's decisions. We do not consider that clause, however, and we bypass other liability-limiting clauses, because Capital One did not break any promise it made to plaintiffs, even viewing the contractual language in the way plaintiffs want us to read it. Plaintiffs' appeal is limited to Capital One, authorized by a partial final judgment under Fed. R. Civ. P. 54(b).

Capital One's power to resign and transfer the assets stems from this clause:

> We can resign as custodian at any time effective 30 days after we send written notice of our resignation to you. Upon receipt of that notice, you must make arrangements to transfer your IRA to another financial organization. If you do not complete a transfer of your IRA within 30 days from the date we send the notice to you,

> we have the right to transfer your IRA assets to a successor IRA trustee or custodian that we choose in our sole discretion … .

Capital One gave plaintiffs more than 30 days' notice and added (going beyond the required notice) that unless they elected otherwise Inspira would put the funds in a sweeps account. Plaintiffs insist that Capital One should have chosen a different successor whose offered rate of return was higher. For this proposition they rely on a principle of state law requiring contracting parties to engage in good faith and fair dealing toward each other. See *Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017); *Ward's Equipment, Inc. v. New Holland North America, Inc.*, 254 Va. 379, 385 (1997). (The parties dispute whether Delaware or Virginia supplies the governing law, but as both states appear to use the same approach we need not decide who is right.) Capital One contends that the good-faith principle is just a way to resolve contractual ambiguities and that this contract is not ambiguous. To simplify matters, however, we assume that the principle applies.

Even on that assumption, plaintiffs must lose. Capital One did not exploit a contractual loophole to enrich itself at customers' expense. The complaint asserts that Capital One received "valuable consideration for the transfer", but plaintiffs have not told us what this means or cited any decision in either Delaware or Virginia requiring a resigning custodian to disclose the financial terms of the transaction.

What is unfair—or evinces a departure from good faith—about giving customers complete discretion to choose a successor custodian and complete discretion to choose the vehicles through which the successor deploys the money? Plaintiffs do not contend that Capital One set out to make the funds' disposition hard to change. That might be a problem, because some customers devote little attention to notices or lack the intellectual capacity to make independent decisions.

Nor do plaintiffs say that Capital One arranged for Inspira to offer lower rates of return than customers whose funds came from sources received from Inspira's sweeps account. Similarly there might have been a problem if Capital One had sent incomplete or confusing notices. But plaintiffs do not make such an argument or contend that they were unable to choose. And the arrangement to route the money presumptively to a sweeps program minimized customers' risk until they made their own decisions. One can only imagine the howls that would have arisen had Inspira put the money in a stock market fund that promptly lost 10% of its value. The sweeps fund didn't pay much, but it carried trivial risk. Putting money from rolled-over IRAs into sweeps accounts is normal in the financial-services industry.

Plaintiffs easily could have discovered the rate of return that Inspira was offering on its sweeps account. They could have told Inspira to put the money in a different vehicle (such as a stock market index fund) or had Capital One send it to a money manager other than Inspira. They could have learned the rates of return available from Fidelity, Vanguard, Schwab, or other mutual-fund operators. Capital One gave them time to do this before the transfer—and plaintiffs could have moved the money freely after it arrived at Inspira. Plaintiffs do not contend that Capital One handed their money to a known or suspected thief or Ponzi-scheme operator. Since plaintiffs could have chosen for themselves who would manage their money, and in what investment vehicle, it is impossible to conclude that Capital One deprived them of good faith or fair dealing in carrying out its obligations.

AFFIRMED